1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA,            )     Case No.  08CR256-L
                                        )
12                  Plaintiff,           )
                                        )     **ORDER**
13  vs.                                  )
                                        )
14  HERMELINDO MEDINA (11),              )
                                        )
15                  Defendant.           )
                                        )
16  _____     )

17          This matter came before the Court for sentencing on September 8, 2009.  At the

18  sentencing hearing the Court applied a 1-to-1 crack to powder cocaine ratio and imposed

19  a sentence of 30 months.  The Court writes separately from the Judgment order to explain

20  the reasons for applying the 1-to-1 ratio.

21                                       I.

22          Defendant pled guilty to one count of conspiracy to distribute cocaine base (crack

23  cocaine) in violation of 21 U.S.C. § 841(a)(1) and 846.  The Pre-Sentence Report

24  calculated Defendant's sentencing guidelines as follows: a base offense level of 31, a

25  two-level decrease for minor role, and a three-level downward adjustment for acceptance

26  of responsibility.  Because Defendant met the "safety valve" criteria under 18 U.S.C. §

27  3553(f), the Government recommended an additional two-level reduction.  Therefore,

28  Defendant's total offense level was 24.  With a Criminal History Category of I, the

1　advisory guideline range was 51 to 63 months. This calculation was based on the 100-to-

2　1 crack to powder ratio contained in the Federal Sentencing Guidelines.

3　　　　Defendant filed a motion for downward departure, asking the Court to apply a 1-

4　to-1 crack to powder cocaine ratio. He argued the Court should depart downward on the

5　basis that the 100-to-1 ratio is inherently unfair and unreasonable. The Government did

6　not object to Defendant's motion.

7　　　　　　　　　　　　　　　　　　　　II.

8　　　　In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), the Supreme

9　Court held that sentencing courts are not required to adhere to the 100-to-1 ratio

10　embodied in the Guidelines. In *Kimbrough*, the Court discussed the history and principle

11　problems with the 100-to-1 ratio. After detailing the Sentencing Commission's views

12　that the crack to powder discrepancy is generally unwarranted and produces

13　disproportionately harsh sentences, the Court concluded that "it would not be an abuse of

14　discretion for a district court to conclude when sentencing a particular defendant that the

15　crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s

16　purposes, even in a mine-run case." *Id.* at 575.

17　　　　In *Spears v. United States*, 129 S.Ct. 840, 843-44 (2009), the Supreme Court

18　clarified that "district courts are entitled to reject and vary categorically from the crack-

19　cocaine Guidelines based on a policy disagreement with those Guidelines." The Supreme

20　Court also explained that "[a] sentencing judge who is given the power to reject the

21　disparity created by the crack-to-powder ratio must also possess the power to apply a

22　different ratio, which in his judgement, corrects the disparity." *Id.* at 843.

23　　　　This Court concludes that there are sound policy reasons for rejecting the 100-to-1

24　crack to powder ratio and adopting a 1-to-1 ratio. For one, the Sentencing Commission

25　has long advocated for eliminating or at least reducing the 100-to-1 ratio. In 1995, the

26　Commission proposed amending the Sentencing Guidelines to replace the 100-to-1 ratio

27　with a 1-to-1 ratio. *See* Amendments to the Sentencing Guidelines for U.S. Courts, 60

28　Fed.Reg. 25074-01 (1995). Congress rejected the proposal. In 1997, the Commission

1 recommended a 5-to-1 ratio, and in 2002 it proposed a 20-to-1 ratio.  *See* U.S. Sentencing

2 Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy (1997)

3 and U.S. Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing

4 Policy (2002), *available at* http://www.ussc.gov/reports.htm.  Congress took no action in

5 response to either proposal.  In 2007, the Commission again urged Congress to reduce the

6 100-to-1 ratio, calling the crack to powder disparity an "urgent and compelling" issue.[1]

7 U.S. Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing

8 Policy (2007), *available at*  http://www.ussc.gov/ reports.htm.

9          The Department of Justice also endorses eliminating the disparity between crack

10 and powder cocaine in sentencing.  On April 29, 2009, Assistant Attorney General Lanny

11 A. Breuer testified before the Senate Judiciary Committee.  He stated that the Justice

12 Department intends to "focus on formulating a new federal cocaine sentencing policy;

13 one that completely eliminates the sentencing disparity between crack and powder

14 cocaine . . .."  *See* Statement of Lanny Breuer, Assistant Attorney General, Criminal

15 Division, United States Department of Justice, Before the United States Senate

16 Committee on the Judiciary,  Subcommittee on Crimes and Drugs, Hearing Entitled

17 "Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity"

18 (April 29, 2009), *available at* http://judiciary.senate.gov/pdf/09-04-29Breuer

19 Testimony.pdf.

20          Further, Congress appears poised to revise the statutory penalty scheme to

21 eliminate the crack-powder disparity.  On July 29, 2009, the House Judiciary Committee

22 approved H.R. 3245, entitled "The Fairness in Cocaine Sentencing Act of 2009."  The

23 bill, if enacted, will remove references to "cocaine base" from the U.S. Code, effectively

24 leaving a 1-to-1 ratio.  *See* H.R. 3245, 111th Cong. (2009).

25

26          [1] In 2007, the Commission also amended the Guidelines to reduce the base offense level
27 associated with crack cocaine by two levels.  However, the Commission noted its amendment
was "only . . . a partial remedy to some of the problems associated with the 100-to-1 drug
28 quantity ratio."  2007 Report at 10.

1    In addition, several district courts have adopted a 1-to-1 ratio.  The leading case is

2    *United States v. Gully*, 619 F.Supp.2d 633 (N.D. Iowa 2009).  In *Gully*, the court

3    explained that there are at least five distinct policy objections to any disparity between

4    crack and powder cocaine sentences, including:

5       (1) the 100-to-1 ratio "'does not exemplify the Commission's exercise of its

6       characteristic institutional role.' . . .  Rather that ratio is the result of congressional

7       mandates that interfere with and undermine the work of the Sentencing

8       Commission;" (2) "The assumptions about the relative harmfulness of crack

9       cocaine and powder cocaine and the harms that come with trafficking in those

10      controlled substances are not supported by recent research and data;" (3) the 100-

11      to-1 ratio "is inconsistent with the goals of the 1986 Act, because it tends to punish

12      low-level crack traffickers more severely than major traffickers in powder

13      cocaine;" (4) the 100-to-1 ratio's "disproportionate impact on black offenders

14      fosters disrespect for and lack of confidence in the criminal justice system;" and

15      (5) even the 20-to-1 ratio approved in *Spears* "improperly uses the quantity ratio as

16      a proxy for various kinds of harm and violence that may or may not come with

17      trafficking of crack cocaine in a particular case."

18   *Gully*, 619 F.Supp.2d at 641-42.  The court found "the appropriate methodology is to use

19   a 1:1 crack-to-powder ratio not just in an individual case or in a 'mine-run' crack case,

20   but in all 'crack' cases, then to enhance sentences for individual defendants for trafficking

21   offenses that actually involve weapons or bodily injury, or for other conduct warranting

22   enhancement under 18 U.S.C. § 3553(a) . . .."  *Id.* at 644.

23      The Court finds *Gully* persuasive and adopts its reasoning.  *See also United States*

24   *v. Lewis*, 623 F.Supp.2d 42 (D. D.C. 2009) (stating "the appropriate ratio is 1-to-1");

25   *United States v. Owens*, 2009 WL 2485842 (W.D. Pa. Aug. 12, 2009) ("I find that a 1-to-

26   1 crack-to powder ratio is appropriate in this case and will apply this ratio in all future

27   crack cocaine cases."); *United States v. Russell*, 2009 WL 2485734 (W.D. Pa. Aug. 12

28   2009) (same); *United States v. Carter*, 2009 WL 2578958 (W.D. Va. Aug. 18, 2009)

1   (applying a 1-to-1 ratio); *United States v. Luck*, 2009 WL 2462192 (W.D. Va. Aug. 10,

2   2009) (same).

3                                       III.

4        Based on the foregoing, the Court granted Defendant's motion for downward

5   departure. Applying a 1-to-1 ratio in this case reduced Defendant's total offense level to

6   19, with a guideline range of 30-37 months. The Court imposed a sentence of 30 months,

7   finding it was sufficient, but not greater than necessary to comply with the purposes set

8   forth in 18 U.S.C. § 3553(a). This sentence is set forth in the Judgment issued on

9   September 9, 2009.

10   **SO ORDERED.**

11

12   DATED: September 11, 2009

13                                     _____

                                     M. James Lorenz

14                                      United States District Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28